IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Terry Maness, (a/k/a Terry W. Maness, Terry Wayne Maness, formerly SCDC# 121322), Manual Ard (a/k/a Manual C. Ard), Rufus Belding (a/k/a Rufus L. Belding), Jackie R. Cantrell, Johnny Carrigg, Robert Cogdill, Frank D. Cooper, Sr. (a/k/a Frank G. Cooper, Sr., a/k/a Frank Cooper), Kyle Crisco, Randy Davenport, Michael Davis (a/k/a Michael A. Davis, Sr.), Boyd Dean, Joey Eggers, James Ettel, Timothy Farmer, Charles Finley, Jonathan Francis (a/k/a Jonathan C. Francis), Robert Glenn, Alden D. Hiott (a/k/a Alden Hiott), Joseph W. Holder, James Hughes, William A. Johnson, Raymond June, John F. Kennedy, Shaun Knox, Ernest Larch, Floyd D. Lipe, Charles Maxfield, Herbert McCoy, Roger Dale McCoy (a/k/a Roger D. McCoy), Keith McHugh, Michael Miller, Kenneth Outen (a/k/a Kenneth Outen, Sr.), David Lee Parker, Anthony Perrineau, Stephen Plough, Terry Potts, James Price, James D. Reynolds, Daniel L. Seay (a/k/a Daniel Leon Seay), Hubert Spears (a/k/a Hubert Spires), James Tutt, Kenneth Whitcraft, and Barney Wilkins,<br><br>                                    Plaintiffs,<br><br>vs.<br><br>Mr. Jonathan Ozmint, Director, South Carolina Department of Corrections; Mr. Parker Evatt, Mr. Michael Moore, Mr. Frederick Dodge, Mr. Gary Maynard and Mr. William D. Catoe, Ex-Directors, South Carolina Department of Corrections,<br><br>                                    Defendants.<br>_____ | Civil Action Numbers:<br>3:06-382-HMH-BHH<br>3:06-671-HMH-BHH<br>3:06-673-HMH-BHH<br>3:06-674-HMH-BHH<br>3:06-675-HMH-BHH<br>3:06-676-HMH-BHH<br>3:06-677-HMH-BHH<br>3:06-678-HMH-BHH<br>3:06-679-HMH-BHH<br>3:06-680-HMH-BHH<br>3:06-681-HMH-BHH<br>3:06-682-HMH-BHH<br>3:06-683-HMH-BHH<br>3:06-684-HMH-BHH<br>3:06-685-HMH-BHH<br>3:06-686-HMH-BHH<br>3:06-687-HMH-BHH<br>3:06-689-HMH-BHH<br>3:06-691-HMH-BHH<br>3:06-692-HMH-BHH<br>3:06-693-HMH-BHH<br>3:06-694-HMH-BHH<br>3:06-695-HMH-BHH<br>3:06-696-HMH-BHH<br>3:06-697-HMH-BHH<br>3:06-698-HMH-BHH<br>3:06-699-HMH-BHH<br>3:06-702-HMH-BHH<br>3:06-703-HMH-BHH<br>3:06-704-HMH-BHH<br>3:06-705-HMH-BHH<br>3:06-709-HMH-BHH<br>3:06-711-HMH-BHH<br>3:06-712-HMH-BHH<br>3:06-713-HMH-BHH<br>3:06-714-HMH-BHH<br>3:06-715-HMH-BHH<br>3:06-716-HMH-BHH<br>3:06-719-HMH-BHH<br>3:06-722-HMH-BHH<br>3:06-723-HMH-BHH<br>3:06-724-HMH-BHH<br>3:06-725-HMH-BHH |

**REPORT AND RECOMMENDATION
OF MAGISTRATE JUDGE**[1]

---

    [1] The plaintiffs, with the exception of the lead plaintiff, are listed alphabetically by last name; case numbers are listed chronologically.

These are forty-two[2] (42) separate civil rights actions filed on February 6, 2006, by persons who are involuntarily confined through the Behavior Disorders Treatment Program operated by the South Carolina Department of Mental Health ("DMH"). The Court has previously designated a "lead case" for docket control purposes and has directed that the Complaint, which is identical in all 42 cases, be served on all defendants. [Doc. 12.] The plaintiffs have also been granted permission to serve and file one copy of any motion or pleading in the lead case for purposes of satisfying their responsibility to do so in all 42 cases. [Doc. 39.]

This matter is before the Court on two motions of the defendants' for summary judgment. [Docs. 22, 32.] By order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiffs were advised of the summary judgment procedure and the possible consequences if they failed to adequately respond to the motions. The plaintiffs have filed a response.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d),(e) & (f), D.S.C., this magistrate judge is authorized to review all pretrial matters in this case, and submit findings and recommendations to the District Court.

**FACTUAL BACKGROUND**

Each Plaintiff is now in the custody of the DMH under provisions of the South Carolina Sexually Violent Predators Act ("SVPA"), S.C. Code Ann. § 44-48-10 *et seq*. In 1998, the South Carolina General Assembly enacted the SVPA, modeled after a similar

---

[2] There were originally 43 separate actions. The Court has recently dismissed Plaintiff Johnny Carrigg's case without prejudice.

Kansas statute. South Carolina's version of the SVPA provides for the involuntary civil commitment to the custody of the DMH of sexually violent predators who are "mentally abnormal and extremely dangerous." S.C. Code Ann. § 44-48-20. Each of the plaintiffs, prior to his commitment under the SVPA, had served time in the South Carolina Department of Corrections ("SCDC") as an incarcerated criminal.

## APPLICABLE LAW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The plaintiffs have brought this action *pro se*. This fact requires that their pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown,

3

the motion should be granted. See Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

In their respective Complaints, the plaintiffs assert that, while serving their criminal sentences, they had a constitutional right to rehabilitation:

> . . . by [Defendants'] denying them Rehabilitation mandated and required by the S.C. Constitution Article XII, § II3 and reformation mandated by State Law. The S.C. Constitution and State Law mandates that each and every person incarcerated within the Department of Corrections receive rehabilitation and reformation. The Defendants have not and did not provide the Plaintiff(s) with the rehabilitation or reformation as required by law. This denial by the Defendants to provide rehabilitation and reformation to the Plaintiff(s) amounted to denial of the Plaintiff(s) mandated Statutory and Constitutional Rights while Plaintiff(s) were in the Defendants custody and control.
>     Such violations were and are protected by the Constitutional mandates of the South Carolina Constitution, S.C. Code of Laws, and the United States Constitutions Fourteenth Amendment Due Process and Equal Protection Clauses.
>
> (Complaint at 2.)

4

The plaintiffs make essentially two claims. First, they allege, as a matter of purely state law, that they had an absolute constitutional and statutory right to rehabilitation during their criminal incarceration. To that end, the plaintiffs claim that South Carolina Constitution Article XII, § II and S.C. Code § 23-3-20 express the policy of South Carolina that persons subject to confinement for criminal acts be rehabilitated.

Second, they appear to claim, as a matter of federal constitutional law, that they are entitled to rehabilitation and that their detention has been impermissibly extended for a failure to provide them with rehabilitation during their criminal incarceration. As to the duration of their detention, the plaintiffs' release from the DMH is expressly contingent upon their reformation in regards to any "mental abnormality or personal disorder." (Resp. Summ. J. at 11, 12.) The plaintiffs suggest, therefore, that to the extent they were denied access to rehabilitation during their incarceration, their period of confinement with the DMH was necessarily extended beyond what it might have otherwise been had they been able to have rehabilitation during their incarceration.

As to their federal claim, the plaintiffs nowhere identify any basis in federal law to claim a constitutional entitlement to rehabilitation. Although, the plaintiffs summarily contend that the failure to provide rehabilitation constitutes a violation of the Fourteenth Amendment of the United States Constitution, they have failed to substantiate that claim with any argument or authority beyond the bald-faced assertion that it does.

The defendant responds that no basis under either federal or state law exists for the claims presented by the plaintiffs, and the Court agrees.

Initially, the Court would readily admit the modern trend to ensure that rehabilitation be an important aim of our penal system. *See Kelly v. Robinson*, 479 U.S. 36, 52 (1986) ("Thus, it [criminal justice system] is concerned not only with punishing the offender, but

5

also with rehabilitating him."); *Williams v. People of State of N.Y.*, 337 U.S. 241, 248 (1949) ("Retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence.") In that respect, the Court would also institutionally express its hope that the plaintiffs involved in this case, and all individuals who find themselves incarcerated in our prisons or civilly detained, would not only be afforded an opportunity to undergo rehabilitation but that such efforts would, in fact, prove effective. In practice, courts today, including this one, routinely afford defendants, inmates, and other detainees in conjunction with bond and sentencing the opportunity to participate in rehabilitation programs. Notwithstanding this aspirational desire of the legal system, the plaintiffs have no viable claim in this case, whether statutory or constitutional, state or federal, concerning rehabilitation.

## I.  DUE PROCESS CLAIM

Although the plaintiffs have made no effort to argue their Fourteenth Amendment claim,[3] the Court believes that the plaintiffs' Complaint and response to summary judgment raise concerns serious enough to warrant a responsive and thorough treatment as to that claim. Initially, the Court would recognize generally that in order for the plaintiffs to prevail on either a procedural or substantive due process claim, they must demonstrate that they were deprived of "life, liberty, or property" by governmental action. *See Plyler v. Moore*, 100 F.3d 365, 374 (4th Cir.1996); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 826-27 (4th Cir.1995); *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir.1995). It is

---

[3] The plaintiffs claim that both the due process and equal protection clauses of the Fourteenth Amendment have been violated by the defendants actions in allegedly failing to provide rehabilitation. But, while the plaintiff's Complaint and response to summary judgment articulate at least a discernable due process claim, they in no way explain the basis for any equal protection claim. The plaintiffs, therefore, have failed in their burden to create any issues of fact as to it.

6

undisputed that the plaintiffs were not deprived of life or property by governmental action; they claim only that the defendants' actions deprived them of a liberty interest in rehabilitation and, ultimately, in the earliest possible release from the DMH.

### A.     Federal Liberty Interest In Rehabilitation

The Fourth Circuit has expressly recognized that although rehabilitation is one of the primary purposes and goals of incarceration, "it is not mandated by any provision of the Constitution." *Bowring v. Godwin*, 551 F.2d 44, 48 n.2 (4th Cir. 1977); *see also Beatty v. Lanham*, 1994 WL 581458, at *1 (4th Cir. October 25, 1994). The United States Supreme Court has agreed that inmates have no general constitutional interest in participation in a rehabilitation program. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (inmate has no legitimate statutory or constitutional entitlement in eligibility for rehabilitative program sufficient to invoke due process when eligibility decision is discretionary with prison officials). Other circuits have reached the identical conclusion. *See, e.g., Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir.1982) ("[F]ailure to provide a rehabilitation . . . does not, by itself, constitute cruel and unusual punishment."); *Fiallo v. de Batista*, 666 F.2d 729, 730 (1st Cir.1981) (holding that inmates have no constitutional right to rehabilitation programs such as treatment for addictions); *Solomon v. Benson*, 563 F.2d 339, 342 (7th Cir.1977) ("[A] prisoner has no statutory or constitutional entitlement in classification and rehabilitative programs sufficient to invoke due process."). Accordingly, there is no federal constitutional liberty interest in rehabilitation.

### B.     State Created Liberty Interest In Rehabilitation

It is true, however, that liberty interests, protected by the Fourteenth Amendment of the United States Constitution, may arise from the laws or actions of the states. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Beverati v. Smith*,

7

120 F.3d 500, 502 (4th Cir. 1997).  For example, the Supreme Court has found that certain state regulations grant inmates a protected interest in parole, *see Board of Pardons v. Allen*, 482 U.S. 369 (1987), and in good-time credits, *Wolff v. McDonnell*, 418 U.S. 539, 556-572 (1974).  Under the right circumstances, therefore, a constitutional interest in rehabilitation might potentially be created by virtue of a state law or regulation.  *See Hayes v. Thompson*, 726 F.2d 1015, 1017 (4th Cir.1984); *see also Olim v. Wakinekona,* 461 U.S. 238, 249 (1983).

The plaintiffs have identified two provisions of state law, which they claim create a liberty interest in rehabilitation.  First, the plaintiffs recite Article 12, Section 2 of the Constitution of South Carolina, which reads as follows:

> Institutions for confinement of persons convicted of crimes. The General Assembly shall establish institutions for the confinement of all persons convicted of such crimes as may be designated by law, and shall provide for the custody, maintenance, health, welfare, education, and rehabilitation of the inmates.

S.C. Const. Art. 12, § 2.  Second, the plaintiffs rely upon a declaration of policy regarding reformation in Section 24-1-20 of the South Carolina Code:

> **SECTION 24-1-20. Declaration of policy.**
>
> It shall be the policy of this State in the operation and management of the Department of Corrections to manage and conduct the Department in such a manner as will be consistent with the operation of a modern prison system, and with the view of making the system self-sustaining, and that those convicted of violating the law and sentenced to a term in the State Penitentiary shall have humane treatment, and be given opportunity, encouragement and training in the matter of reformation.

S.C. Code § 24-1-20.

The plaintiffs spend substantial energy arguing that Article 12, Section 2 of the

South Carolina Constitution and Section 24-1-20 of the South Carolina Code are mandatory and, therefore, effective to create a liberty interest in rehabilitation. However, whether or not a liberty interest is created by virtue of a state law or regulation no longer turns on a determination as to the mandatory or discretionary nature of the law or regulation. A brief discussion of United States Supreme Court precedent in this regard is instructive.

In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court suggested that state statutes and regulations could create liberty interests if the state, in drafting its procedural guidelines, repeatedly used "explicitly mandatory language in connection with requiring specific substantive predicates . . . ." *Id*. at 471. For example, in *Hewitt*, Pennsylvania guidelines required that certain procedures "shall", "will" or "must" be employed and that actions such as administrative segregation must be preceded by specific substantive findings such as the inmate posed "a threat of serious disturbance." *Id*. In keeping with *Hewitt*, the Supreme Court later stated, in *Olim*, that "a State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim,* 461 U.S. at 249.

As a result of *Hewitt* and its progeny, the Supreme Court and lower courts were forced to wrestle with intricate and often routine prison guidelines to determine "whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." *Sandin v. Conner*, 515 U.S. 472, 480-81 (1995). Such inquiry "had the negative result of shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation the Court" thereby encouraging "prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges," *id*. at 481 – precisely, what the

9

plaintiffs have done in this case.

In response, the Supreme Court has since retreated from its decision in *Hewitt* and returned to the traditional due process analysis as prescribed by *Wolff v. Mcdonnell*, 418 U.S. 539 (1974). Namely, that while states may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84 (citations omitted). The Fourth Circuit has consistently followed *Sandin*. *See, e.g., Kitchen v. Upshaw*, 286 F.3d 179, 185-86 (4th Cir. 2002) (finding that denial of work-release does not create atypical and significant hardship). Accordingly, the Court need not consider whether the state law, relied upon by the plaintiffs, somehow creates a guarantee of rehabilitation for state prisoners. That is a matter strictly of state law (which the Court declines to address, *infra*). Instead, the Court must focus on whether or not the promise of rehabilitation and the alleged denial of rehabilitation somehow rise to the level of a deprivation of a liberty interest, as understood in the United States Constitution. In other words, even assuming *arguendo* that South Carolina has created an absolute statutory or constitutional right in rehabilitation, it does not necessarily follow that a liberty interest protected by the Fourteenth Amendment rests in the same; in fact, it does not.

Specifically, *Sandin* instructs that, in order to show the deprivation of a liberty interest under the Fourteenth Amendment as a result of state action, the plaintiffs must show either that (1) the conditions complained of exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause by its own

10

force or (2) the confinement creates an atypical or significant hardship and the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint. *See Sandin*, 515 U.S. at 483-484, 486-87 (discussing effect on both condition of sentence and duration of sentence); *see also Delaney v. Ozmint,* 2006 WL 1878982, at *7 (D.S.C. July 5, 2006). Said differently, the Court must consider whether the action taken exceeds the sentence imposed, either as to its *condition* or *duration*, in such an extreme way as to give rise to the protection of the Due Process Clause.[4] *See Sandin*, 515 U.S. at 483-484, 486-87.

### 1.    *Condition of Confinement*

As a starting place, the Court would consider any argument that denying rehabilitation somehow constitutes an "atypical and significant hardship" – in that it creates an excessively harsh *condition* – untenable as a matter of law. The Court has already recited the well-established rule that rehabilitation is not constitutionally guaranteed, precisely because, in itself, rehabilitation does not substantially touch and concern confinement and restraint in any serious respect. Notwithstanding, the Court will comment briefly on a lack of rehabilitation as strictly a *condition* of prison life.

The plaintiffs have not put forward any evidence or argument that a failure to provide them with reformation and rehabilitation would have imposed an "atypical and significant

---

[4] *Sandin* does not make it a point to expressly differentiate those liberty interests that might arise as a result of overly harsh conditions versus those that arise as a result of an unexpected extension of the duration of an inmate's sentence. Such distinctions, however, are clearly a part of the *Sandin* decision and lower court decisions, which have followed in its wake. *See Sandin*, 515 U.S. at 483-484, 486-87; *see, e.g.*, *Beverati v. Smith*, 120 F.3d 500 (4th Cir.1997) (conditions - administrative segregation). The Court thinks that the plaintiffs' present claims are best considered with this distinction in mind, by first analyzing whether a lack of rehabilitation is an overly harsh condition and second analyzing whether it effects the duration of the plaintiffs' sentence.

11

hardship" on them in regards to the conditions of their sentence. *See Sandin*, 515 U.S. at 483-84. In order to determine whether an action is an atypical and significant hardship, the Court must compare the conditions to which the plaintiffs were exposed with those they could expect to experience as an ordinary incident of prison life. *See id.* at 485-86; *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir.1997). "This analysis necessarily is fact specific in that it requires a determination of the conditions the prisoner maintains give rise to a liberty interest and those incident to normal prison life." *Bevarati,* 120 F.3d at 503. "But, the ultimate determination of whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination." *Id*.

The plaintiffs cannot genuinely contend that a simple lack of reformation and rehabilitation, in itself, is "atypical and a significant hardship" as compared to the normal incidents of prison life. In fact, the plaintiffs aver in their sworn affidavits that rehabilitation programs were "cancelled and denied all inmates on or about 1993 or 94." (*See generally* Pl.s' Affs. ¶ 2.) Accordingly, by the plaintiffs' own evidence, it was precisely "typical" for the plaintiffs *not* to receive rehabilitative treatment because none of the inmates were so treated. The plaintiff's have not put forward any evidence that a lack of rehabilitation opportunities is in anyway atypical. In fact, the Court would take judicial notice that there is nothing atypical about a prisoner being denied permission to participate in rehabilitation programs, generally; such is simply not guaranteed. *See Kitchen*, 286 F.3d at 186-87 ("We take judicial notice of the fact that there is nothing atypical about prisoners being denied permission to leave jail in order to work."). Moreover, state regulations "of *general application* . . . . do not, by definition, impose 'atypical and significant hardship on the inmate' as defined in the Sandin decision." *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (emphasis added). By the plaintiff's own admission, rehabilitation was limited for all

12

inmates. There is no other evidence of record from which a reasonable jury could conclude that inmates were otherwise typically provided rehabilitation as an incident of daily prison life.

Further, it cannot be said that a lack of rehabilitation imposes a "hardship" in regards to the ordinary conditions of daily life. Hardship necessarily requires some "suffering or adversity." Blacks Law Dictionary 7th Ed. Certainly, the plaintiffs may subjectively consider the condition of their own psychological and sexual proclivities as a form of "suffering," -- although the Court makes takes no position either way; but, whatever daily "suffering" there is in that regard is substantially more related to various other causes, which necessarily predate any failure of the state to reform such suffering in the very last instance. In other words, a lack of rehabilitation is not the cause of the plaintiff's psychological and emotional suffering, if any.

The plaintiffs have not identified any other way in which a lack of rehabilitation, in itself, might significantly burden the incidents of daily prison life for the plaintiffs. Although the ability to participate may constitute for an inmate recreation, escapism, relaxation, etc., the Court rejects that a mere inability to participate can be said to generate constitutionally actionable "hardship." The Fourth Circuit has rejected that even the harshest conditions of administrative segregation rarely rise to the level of an "atypical and significant hardship." *See, e.g., Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir.1997) (holding administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). It seems dubious that a simple lack of rehabilitative programs might – to whatever extent they are denied. The plaintiffs have not explained or

13

presented any evidence that it does.

The South Carolina Supreme Court, in *Sullivan v. South Carolina Dept. of Corrections*, 586 S.E.2d 124 (S.C. 2003), has also agreed that a lack of access to rehabilitation does not constitute an "atypical and significant hardship." *Id*. at 127-28. While the decision of the South Carolina Supreme Court is in no way binding on this Court in regards to the Fourteenth Amendment analysis, the Court finds it persuasive. Consistent with this Court's reasoning above, the South Carolina Supreme Court held that "recognizing a liberty interest in a specific course of rehabilitation does not comport with *Sandin's* standard; denying Sullivan access to SOTP II or any other sex offender program does not impose an 'atypical or significant hardship' on Sullivan as all other inmates designated as sex offenders are afforded the same access to treatment." *Id*. at 128.

For all these reasons, rehabilitation does not affect the ordinary incidents of prison life in such a way as to implicate any liberty interests.

### 2.     *Duration of Confinement*

While the Court rejects that the statutory and constitutional provisions, relied upon by the plaintiffs, create any liberty interest in rehabilitation, there exists at least a colorable concern that one is created in the SVPA itself. The plaintiffs have argued this point only indirectly, (*see* Pl.s' Resp. Summ. J. at 11, 12), yet it is their most salient point. While a lack of rehabilitation does not produce severe conditions beyond that which is anticipated, the Court is concerned as to whether it has the effect of impermissibly lengthening the plaintiff's reasonably anticipated detention – an atypical and significant hardship. Specifically, the SVPA predicates release from the DMH upon rehabilitation of the individual's mental abnormality or personality disorder:

> the person must be committed to the custody of the Department of Mental Health for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large and has been released pursuant to this chapter.

S.C. Code § 44-48-100(a); *see also* S.C. Code § 44-48-120. It follows, therefore, that to deny any ability to rehabilitate oneself would be to eliminate all possibility of release, a seemingly obvious due process issue. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (stating that indefinite detention of an alien "would raise a serious constitutional problem"). But the plaintiffs do not contend that they have been denied rehabilitation opportunities altogether or even at the DMH. Instead, they contend simply that they were denied rehabilitation opportunities during their time as inmates with the South Carolina Department of Corrections ("SCDC"). By extension, the plaintiffs protest that this alleged denial of rehabilitation as inmates necessarily prolonged the time in which it would take them to achieve the required reformation of their "abnormality" or "disorder" under the SVPA. (*See* Pl.s' Resp. Summ. J. at 11, 12.)

The argument truly has some appeal in reason and sentiment. Legally, however, it is unavailing. The plaintiffs are presently detained with the DMH. Their detention is civil in nature and not an extension of their criminal conviction. *See In re Matthews*, 345 S.C. 638, 550 S.E.2d 311, 316 (S.C.2001) (concluding that the SVPA is civil rather than criminal and that confinement under the SVPA is non-punitive); *see also Michau v. Charleston County, S.C.*, 434 F.3d 725 (4th Cir. 2006) (recognizing *Matthews*). The SVPA specifically states that "the control, care, and treatment must be provided at a facility operated by the Department of Mental Health." S.C. Code § 44-48-100. While the DMH "may enter into an interagency agreement with the Department of Corrections for the control, care, and treatment of these persons," *id*., the individual decisions to commit the plaintiffs to the

15

DMH, in this case, were not made until after their criminal incarceration had ended.[5]  (*See* Pl.s' Affs. ¶¶ 1, 4.)  Accordingly, the Court cannot perceive any obligation on the part of the defendants to have provided recourse, remedy, or opportunity for the plaintiffs to achieve rehabilitation during their criminal incarceration for purposes of sooner release during their civil detention – a detention that had not even yet been legally justified under the SVPA.  Any rehabilitation owed the plaintiffs pursuant to the SVPA did not attach, in the least, until after they were committed to the DMH, pursuant to the Act.

Moreover, the Court does not believe that the plaintiffs were entitled to rehabilitation under the Act according to some specific timetable.  The United States Supreme Court has held that "the States enjoy wide latitude in developing treatment regimens."  *Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997) (citing *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) (observing that the State "has considerable discretion in determining the nature and scope of its responsibilities")).  For example, the Supreme Court concluded that "'the State serves its purpose of treating rather than punishing sexually dangerous persons by committing them to an institution expressly designed to provide psychiatric care and treatment.'"  *Hendricks,* 521 U.S. at 368 n.4 (quoting *Allen v. Illinois*, 478 U.S. 364, 373 (1986).  Said differently, whatever liberty interest South Carolina has created in rehabilitation under the SVPA, it is "doubtless satisfied" insofar as it commits individuals, including the plaintiffs, to the DMH for care and treatment.  *See Hendricks*, 521 U.S. at 368

---

[5] The Court is not unaware of what appears to be the standard practice to make any  civil determination under the SVPA after the expiration of an individual's criminal incarceration.  It is not before the Court to consider whether or not such is the practice actually contemplated by the statute.  Regardless, the Court cannot consider imposing an obligation in regards to rehabilitation potentially arising from the SVPA until the statute is actually employed against the plaintiffs.  In this case, the plaintiffs have sworn that the determination pursuant to the Act was made after their incarceration.  (*See* Pl.s' Aff. ¶ 4.)

16

n.4.  Simply because the plaintiffs would have preferred rehabilitation sooner, does not make it constitutionally incumbent upon the State to so provide it.  *See id.*  Rehabilitation, treatment, and care have ultimately been provided to the plaintiffs and the Court is unaware of any basis to hold that anymore is required.

Regardless, the State, in this case, by all accounts began providing treatment as soon as the plaintiffs were civilly committed pursuant to the SVPA.  Accordingly, there is no liberty interest created in rehabilitation for some unconstitutionally impermissible enlargement of the duration of the plaintiffs' detention.

## II.    State Law Claims

Having dismissed the plaintiffs' federal claim against the defendants, the Court declines to exercise jurisdiction over the whatever state law claims the plaintiff may have against the same.  *See* 28 U.S.C. § 1367(c); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines to exercise jurisdiction over the remaining state law claims.")  Thus, the state law claims made pursuant to the South Carolina Constitution and Code[6] are dismissed without prejudice.

---

[6] If the district court rejects this Court's recommendation in regards to supplemental jurisdiction, the Court would recommend dismissing the state law claims on the basis that *Sullivan v. South Carolina Dept. of Corrections*, 586 S.E.2d 124 (S.C. 2003), both expressly and by implication, bars claims for rehabilitation based on the South Carolina Constitution and Code.  To be clear, *Sullivan* only concerns relevant portions of the South Carolina constitution proffered by the plaintiffs, but the Court believes it speaks, by extension, to whether a right in rehabilitation lies in the declaration of policy recited, by the plaintiffs, from the South Carolina Code.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the defendants' motions for summary judgment [Docs. 22, 32] should be GRANTED and the plaintiff's federal claims against the defendants be DISMISSED with prejudice. It is further RECOMMENDED that the plaintiff's state law claims, of whatever kind, against the defendants be DISMISSED without prejudice.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks<br>
United States Magistrate Judge

December 15, 2006
Greenville, South Carolina.